Filed 8/19/21  Jacks v. City of Santa Barbara CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROLLAND JACKS et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF SANTA BARBARA,<br><br>    Defendant and Respondent. | 2d Civ. No. B299297<br>(Super. Ct. No. 1383959)<br>(Santa Barbara County) |

"A franchise to use public streets or rights-of-way is a form of property [citation], and a franchise fee is the purchase price of the franchise." (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 262 (*Jacks*).)  The City of Santa Barbara (City) and Southern California Edison (SCE) entered into a franchise agreement to include as a surcharge on SCE's electrical bills an amount equal to 1 percent of SCE's gross receipts from the sale of electricity within the City, to be collected from SCE's customers and remitted to the City.  (*Id.* at p. 254.)  This 1 percent surcharge, plus another 1 percent "initial term" charge, is the fee paid for

the privilege of using City property to deliver electricity.[1] (*Id.* at pp. 254-255.)

Proposition 218 generally requires local governments to obtain voter approval before imposing taxes. (Prop. 218, § 3, approved Nov. 5, 1996; Cal. Const., art. XIII C, § 2.) Plaintiffs Rolland Jacks and Rove Enterprises, Inc. dba Hotel Santa Barbara filed this class action against the City, alleging the 1 percent surcharge is not compensation for the privilege of using City property but rather a tax imposed without voter approval, in violation of Proposition 218.

In an earlier appeal, we concluded the 1 percent surcharge is a tax requiring voter approval. The California Supreme Court reversed our decision in part. (*Jacks, supra*, 3 Cal.5th at p. 274.) It determined that "charges that constitute compensation for the use of government property are not subject to Proposition 218's voter approval requirements," but clarified that to constitute compensation, "the amount of the charge must bear a reasonable relationship to the value of the property interest." (*Id.* at p. 254.) If the charge exceeds any reasonable value of the interest, it is a tax requiring voter approval. (*Ibid.*)

The Court directed us to remand the matter to the trial court for further proceedings consistent with *Jacks.* (*Jacks, supra*, 3 Cal.5th at p. 274.) The trial court was tasked with deciding whether the City's 2 percent charge, including both the 1 percent initial term charge *and* the 1 percent surcharge, "bear[s] a reasonable relationship to the value of the property interests transferred." (*Id.* at p. 270.)

---

[1] The 1 percent surcharge requires those receiving electricity in the City from SCE to pay an additional 1 percent of the amount of their electrical bill.

Following a bench trial, the trial court entered judgment for the City. It concluded the 2 percent charge is a valid franchise fee under Proposition 218 and not a tax. Plaintiffs contend the court erred by finding (1) that the franchise fee includes both the 1 percent initial term charge and the 1 percent surcharge and (2) that a reasonable relationship exists between the 2 percent charge and the value of the property interests transferred.

Plaintiffs' position on the first issue is contrary to *Jacks*, which held that the "[t]he fact that the [1 percent] surcharge is placed on customers' bills pursuant to the franchise agreement rather than a unilateral decision by SCE does not alter the substance of the surcharge; *like the initial 1 percent charge, it is a payment made in exchange for a property interest that is needed to provide electricity to City residents*." (*Jacks*, *supra*, 3 Cal.4th at p. 269, fn. omitted, italics added.) Given this instruction, the trial court appropriately analyzed the entire 2 percent charge for compliance with Proposition 218, finding it bears a reasonable relationship to the value of the property interests transferred. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As summarized in *Jacks*, the parties stipulated to the following facts in the trial court:

"Beginning in 1959, the City and SCE entered into a series of franchise agreements granting SCE the privilege to construct and use equipment along, over, and under the City's streets to distribute electricity. At issue in this case is an agreement the City and SCE began negotiating in 1994, when their 1984 agreement was about to expire. The 1984 agreement required SCE to pay to the City a fee equal to 1 percent of the gross annual receipts from SCE's sale of electricity within the City in

3

exchange for the franchise granted by the City.  During the course of extended negotiations regarding a new agreement, the City and SCE extended the terms of the 1984 agreement five times, from September 1995 to December 1999.

"In the negotiations for a long-term agreement, the City pursued a fee equal to 2 percent of SCE's gross annual receipts from the sale of electricity within the City.  At some point in the negotiations, SCE proposed that it would remit to the City as a franchise fee 2 percent of its gross receipts if the Public Utilities Commission (PUC) consented to SCE's inclusion of the additional 1 percent as a surcharge on its bills to customers.  Based on SCE's proposal, the City and SCE tentatively agreed to a 30-year agreement that included the provisions for payment of 2 percent of gross receipts.  Following notice and a hearing, the City Council of Santa Barbara adopted the agreement as City Ordinance No. 5135 on December 7, 1999, with a term beginning on January 1, 2000 (the 1999 agreement).  The ordinance was not submitted to the voters for their approval.

"The 1999 agreement divides its 30-year period into two terms.  The first two years were the 'initial term,' during which SCE was required to pay the City an 'initial term fee' equal to 1 percent of its gross receipts from the sale of electricity within the City.  The subsequent 28 years are the 'extension term,' during which SCE is to pay the additional 1 percent charge on its gross receipts, denominated the 'recovery portion,' for a total 'extension term fee' of 2 percent of SCE's gross receipts from the sale of electricity within the City.  At issue in this case is the recovery portion, which we, like the parties, refer to as the surcharge.

"The 1999 agreement required SCE to apply to the PUC by April 1, 2001, for approval to include the surcharge on its bills to ratepayers within the City, and to use its best efforts to obtain

4

PUC approval by April 1, 2002. Approval was to be sought in accordance with the PUC's 'Re Guidelines for the Equitable Treatment of Revenue-Producing Mechanisms Imposed by Local Government Entities on Public Utilities.' (*Investigation on the Commission's Own Motion to Establish Guidelines for the Equitable Treatment of Revenue-Producing Mechanisms Imposed by Local Government Entities on Public Utilities* (1989) 32 Cal.P.U.C.2d 60, 63 [Cal. P.U.C. Dec. No. 89-05-063] (*PUC Investigation*).) The 1999 agreement further provided that, in the event the PUC did not give its approval by the end of the initial term, either party could terminate the agreement. Thereafter, the City agreed to delay the time within which SCE was required to seek approval from the PUC, but SCE eventually obtained PUC approval, and began billing its customers within the City for the full extension term fee in November 2005." (*Jacks*, *supra*, 3 Cal.5th at pp. 254-256, fn. omitted.)

Plaintiffs filed this class action six years later. The first amended complaint alleged violations of Proposition 218 and sought declaratory relief. In ruling on cross-motions for summary adjudication, the trial court determined the 1 percent surcharge is not a tax under Proposition 218. We reversed, reasoning that because the "primary purpose" of the surcharge is to raise revenue, it is a tax under *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866 (*Sinclair Paint*). (*Jacks*, *supra*, 3 Cal.5th at p. 257.)

On review, the Supreme Court harmonized Proposition 218, *Sinclair Paint* and Proposition 26 – which states that charges for use of government property are not taxes – to arrive at the "reasonable relationship" test. (*Jacks*, *supra*, 3 Cal.5th at pp. 267-268.) The Court recognized that all franchise fees raise revenues but only those *not* reasonably related to the value of the

5

franchised interests are taxes.  (*Ibid.*)  It explained that "sums paid for the right to use a jurisdiction's rights-of-way are fees rather than taxes.  But . . . to constitute compensation for the value received, the fees must reflect a reasonable estimate of the value of the franchise."  (*Id.* at p. 267; *Mahon v. City of San Diego* (2020) 57 Cal.App.5th 681, 704-705 (*Mahon*).)

*Jacks* realized that "franchise fees [could] become a vehicle for generating revenue independent of the purpose of the fees" (*Jacks, supra,* 3 Cal.5th at p. 269), but "rather than guarding against this possibility by concluding that surcharges paid by *ratepayers* are not franchise fees, [*Jacks*] explained that its 'reasonable value' requirement provided the appropriate limitation."  (*Mahon, supra,* 57 Cal.App.5th at pp. 705-706.)

Noting that plaintiffs had adequately pled the lack of a reasonable relationship between the franchise fee and the value of SCE's use of the City's rights-of-way, *Jacks* determined plaintiffs had alleged sufficient facts to overcome the City's motion for judgment on the pleadings.  (*Jacks, supra,* 3 Cal.5th at p. 274.)  Plaintiffs had not, however, established their right to summary adjudication and the matter was remanded for further fact-finding.  (*Ibid.*)

The trial was conducted on the briefs and documentary evidence, including deposition transcripts and expert reports. The trial court found the City had "met its burden of proof to show that the amount of the franchise fee, consisting of the sum of the 1 percent initial term fee and the 1 percent surcharge (for a total of 2 percent) of the gross receipts from the sale of electricity within the City, bears a reasonable relationship to the value of the property interests transferred by [the] City."  Plaintiffs appeal.

6

## II.  DISCUSSION

There are two overarching issues on appeal.  The first is whether the charge to be analyzed for compliance with Proposition 218 consists of just the 1 percent surcharge *or* both the surcharge and the 1 percent initial term charge (for a total 2 percent charge).  The second is whether that charge "bear[s] a reasonable relationship to the value of the property interests transferred" by the City.  (*Jacks*, *supra*, 3 Cal.5th at p. 270.)

Plaintiffs focus almost exclusively on the first issue.  They maintain the franchise fee is limited to the 1 percent initial term charge that SCE includes in its electricity rates and does not include the 1 percent surcharge paid by its customers.

*A.  Standard of Review*

In an action contesting the validity of a fee or charge under Proposition 218, the burden is on the agency to demonstrate compliance.  (*Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1504).)  Proposition 218's provisions are "'liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent.' [Citation.]" (*Jacks*, *supra*, 3 Cal.5th at p. 267.)  Both the trial court and the reviewing court exercise their independent judgment to determine if the fee or charge meets the mandates of Proposition 218.  (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 448.)

Even when we exercise our independent judgment, however, "[w]e review the trial court's resolution of factual conflicts under the substantial evidence standard.  [Citations.] Under this standard, 'the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will

7

support the finding of fact.' [Citation.]" (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 916 (*Morgan*).) "We are required to accept all evidence which supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the verdict. [Citation.]" (*Ibid.*)

### B. *The Charge to be Analyzed for Proposition 218 Compliance is 2 Percent*

Plaintiffs contend the 1 percent initial term charge and the 1 percent surcharge are separate items which must be analyzed separately for compliance with Proposition 218. They claim the trial court violated the law of the case doctrine by accepting the City's argument "that the 1999 SCE-City franchise agreement imposed a 1% franchise fee and a 1% surcharge upon SCE and that, as they are both paid by SCE, both charges represented SCE's negotiated lease payments for city property to operate the franchise." (Emphasis omitted.) Plaintiffs misstate both the City's position and the trial court's ruling.

The law of the case doctrine "'deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citation.]" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.)

Contrary to plaintiffs' assertions, application of this doctrine supports the trial court's determination that the entire 2 percent charge must be analyzed for compliance with Proposition 218. Plaintiffs focus on *Jacks*'s statement that SCE did not assume the burden of the 1 percent surcharge but disregard language acknowledging "that the economic incidence of a charge does not determine whether it is a tax. . . . Valid fees do not

8

become taxes simply because their cost is passed on to the ratepayers." (*Jacks*, *supra*, 3 Cal.5th at p. 271.) The Court elaborated: "[P]ublicly regulated utilities are allowed to recover their costs and expenses by passing them on to their ratepayers. Among the charges included in the rates charged to customers within the City is the initial 1 percent of gross receipts paid in exchange for franchise rights, yet plaintiffs do not contend that this initial 1 percent is a tax because ratepayers do not receive the franchise rights. *The fact that the surcharge is placed on customers' bills pursuant to the franchise agreement rather than a unilateral decision by SCE does not alter the substance of the surcharge; like the initial 1 percent charge, it is a payment made in exchange for a property interest that is needed to provide electricity to City residents.* Because a publicly regulated utility is a conduit through which government charges are ultimately imposed on ratepayers, we would be placing form over substance if we precluded the City from establishing that the surcharge bears a reasonable relationship to the value of the property interest it conveyed to SCE because the City expressed in its ordinance what was implicit — that once the PUC gave its approval, SCE would place the surcharge on the bills of customers within the City." (*Id.* at pp. 268-269, italics added, fn. omitted; see also *id.* at pp. 272-273 ["[T]he stipulated facts reflect that the City and SCE agreed to double the amount to be paid for the privilege of using the rights-of-way and to pass these charges on to the ratepayers"].)

Footnote 10 further explained that "the division of the charge into two parts, with one included in the rates paid by customers and the other separately stated on the bill, was driven by the PUC's effort to ensure that a local government's higher-than-average charges are not unfairly imposed on ratepayers

9

outside of the local government's jurisdiction; *this division of the charges is unrelated to the character or validity of the charges*." (*Jacks*, *supra*, 3 Cal.5th at p. 269, fn. 10, italics added; *Mahon*, *supra*, 57 Cal.App.5th at p. 705 [*Jacks* "specifically rejected the plaintiffs' contention that the surcharge was not a franchise fee because the utility's *ratepayers*, rather than the *utility*, paid the surcharge"]; see *Jacks*, at p. 292 (dis. opn. of Chin, J.) [Majority opinion requires consideration of "entire 2 percent – not just the one percent Recovery Portion . . . in determining the amount of the charge and whether it bears a 'reasonable relationship' to 'value'"].)

In *Zolly v. City of Oakland* (2020) 47 Cal.App.5th 73, review granted Aug. 12, 2020, S262634, the Court of Appeal also rejected the argument that *Jacks* adjudicated only the 1 percent surcharge and not the 1 percent initial term charge. (*Id.* at p. 85.) *Zolly* noted that "[w]hile a true franchise fee is indisputably a nontax, *Jacks* instructs us to look beyond any label and determine whether such a fee 'reflect[s] a reasonable estimate of the value of the franchise.' [Citation.] The Supreme Court did not limit this analysis to the surcharge, but rather addressed all 'charges that constitute compensation for the use of government property.' [Citation.]" (*Ibid.*)

Finally, we are not persuaded by plaintiffs' argument that the City was judicially or equitably estopped from arguing that the franchise fee is 2 percent. As we have explained, *Jacks* clarified that the charge to be analyzed for compliance with Proposition 218 is the entire 2 percent. (*Jacks*, *supra*, 3 Cal.5th at pp. 268-269.)

10

*C. The City Met Its Burden of Establishing a*
*Reasonable Relationship Between the 2 Percent Charge*
*and the Franchise Rights*

*Jacks* "recognize[d] that determining the value of a franchise may present difficulties.  Unlike the cost of providing a government improvement or program, which may be calculated based on the expense of the personnel and materials used to perform the service or regulation, the value of property may vary greatly, depending on market forces and negotiations.  Where a utility has an incentive to negotiate a lower fee, the negotiated fee may reflect the value of the franchise rights, just as the negotiated rent paid by the lessor [sic] of a publicly owned building reflects its market value, despite the fact that a different lessor [sic] might have negotiated a different rental rate.  In the absence of bona fide negotiations, however, or in addition to such negotiations, an agency may look to other indicia of value to establish a reasonable value of franchise rights." (*Jacks*, *supra*, 3 Cal.5th at pp. 269-270; see *Mahon*, *supra*, 57 Cal.App.5th at pp, 706-707.)  *Jacks* left "this issue to be addressed by expert opinion and subsequent case law." (*Jacks*, at p. 270, fn. 11.)

Plaintiffs contend it may be inferred from *Jacks* that the surcharge bears no reasonable relationship to the value of the franchise.  To the contrary, *Jacks* noted that "[a]lthough plaintiffs' allegations and the stipulated facts adequately allege the basis for a contention that the surcharge bears no reasonable relationship to the value of the franchise, [their] motion for summary adjudication did not *establish* this contention." (*Jacks*, *supra*, 3 Cal.5th at p. 273.)  Had *Jacks* decided the issue, as plaintiffs claim, a remand for further fact-finding would have been unnecessary.

11

Plaintiffs further assert that the City must establish an "actual, reasonable relationship" between the amount of the fee and the franchise's value and that the trial court must find a value of "at least 2 [percent] of SCE's gross annual receipts." They are incorrect on both counts. *Jacks* required the trial court to determine whether the 2 percent charge bears a reasonable relationship to the value of the franchise rights. (*Jacks*, *supra*, 3 Cal.5th at p. 271.) There is no requirement of an "actual" relationship. Nor must the City demonstrate a value of *at least* 2 percent. It need only show that 2 percent reasonably approximates the value of the franchise rights. (*Jacks*, *supra*, 3 Cal.5th at pp. 272-273.)

As the City and amicus curiae League of California Cities point out, plaintiffs make virtually no effort to challenge the trial court's factual finding that a reasonable relationship exists between the total 2 percent charge and the value of the franchise rights transferred by the City. Plaintiffs' focus remains on their argument that because SCE only actually incurs the 1 percent initial term charge, that is the only possible franchise fee. *Jacks* specifically stated, however, that "we would be placing form over substance if we precluded the City from establishing that the surcharge bears a reasonable relationship to the value of the property interest it conveyed to SCE." (*Jacks*, *supra*, 3 Cal.5th at p. 269.)

In a comprehensive, detailed opinion, the trial court considered, as evidence of value, the negotiated 2 percent rate, the non-expert evidence cited by the parties, the expert evidence and other indicia of value. The court found that the outcome of the parties' negotiations "is the best indicator that 'the amount of the franchise fee [bears] a reasonable relationship to the value of the property interests transferred.' [Citation.]" It did "not find

12

the parties' other evidence of indicia of value persuasive one way or the other." The court found "the parties' other evidence . . . to be consistent with the negotiated franchise fee as bearing a reasonable relationship to the value of the property interests transferred. However, the Court [did] not find that this other evidence either separately supports or separately undermines the evidentiary persuasiveness of the negotiated result as the best indicator of the reasonable relationship."

In sum, the trial court found "that all of the evidence taken together shows that the amount of the franchise fee (i.e., the 2 percent) bears a reasonable relationship to the value of the interests transferred by [the] City and that [the] City has met its burden of proof on that issue. . . . The Court therefore [concluded] that the 2 percent compensation for the franchise rights set forth in Ordinance 5135 is a valid franchise fee under Proposition 218 and not a tax."

### 1. The Franchise Negotiations

Under the Franchise Act of 1937 (1937 Act), the legally permissible franchise fee applicable to general law cities is "not less than 1 percent of the applicant's gross annual receipts derived from the sale within the limits of the municipality of the utility franchise for which the franchise is awarded." (Pub. Util. Code, § 6231, subd. (c).) As a charter city, however, the City is not bound by the 1937 Act's 1 percent limitation. (*Jacks*, *supra*, 3 Cal.5th at pp. 264-265.)

In May 1994, SCE applied to the City to renew the 1 percent franchise fee that was due to expire on September 30, 1994. SCE requested that the 1937 Act be followed. The parties extended the franchise agreement for one year to permit negotiations.

13

In February 1995, the parties' negotiations reached an impasse. The City sought a 2 percent franchise fee while SCE sought to maintain the 1 percent fee. At that time, Long Beach, San Diego and San Jose, also charter cities, had fees above 1 percent. The parties agreed to extend the existing franchise agreement for three more years. During that time, the City considered municipalization of SCE's facilities as a means of gaining leverage in the negotiations.

In September 1998, SCE reiterated its "strong position to continue the then-current compensation method consistent with the 1937 Act." The City, which had decided against municipalization, relied upon its appraisal of the rights-of-way, other charter cities' franchise fees and other indicia of the franchise's value. SCE acknowledged that the City could charge more than 1 percent but noted the PUC requires that amounts over the 1 percent be billed as a surcharge.

The parties concluded their negotiations in November 1999, agreeing upon the 1 percent initial term fee plus the 1 percent surcharge on ratepayers. They further agreed that if the PUC did not approve the surcharge, the franchise agreement would expire upon written notice of either party.

*2. The Franchise Negotiations Establish that the 2 Percent Charge is a Franchise Fee and Not a Tax*

As previously discussed, *Jacks* allows a municipality to establish the value of a franchise through "bona fide negotiations concerning the property's value." (*Jacks*, *supra*, 3 Cal.5th at p. 270.) The parties' experts also agreed "that the result of negotiation is 'the best indicator of the true market value of the City's franchise property rights.'"

The trial court found that two things were clear from the parties' negotiations: "First, the parties each negotiated in good

14

faith to achieve their respective negotiation goals. The Court finds no evidence to suggest that the parties engaged in any collusive or other non-competitive behavior. As the lengthy time for the negotiations and frequent impasses demonstrate, each party was earnestly negotiating in and for its own best interests. Second, . . . [the] City negotiated to sell a unique asset (the franchise rights) for which the City negotiated with SCE as the only buyer. The one-buyer/one-seller negotiation here is different from negotiations occurring with a vibrant market of alternative buyers and sellers of comparable goods or services."

In *Mahon*, the respondent city similarly offered extensive, undisputed evidence concerning the negotiations surrounding the applicable franchise agreements. (*Mahon, supra*, 57 Cal.App.5th at p. 720.) Among other things, the city's representatives met with the utility representatives more than 30 times during the multi-year negotiating process and the parties exchanged numerous offers, draft ordinances and agreements. The plaintiffs, in turn, offered no evidence suggesting the negotiations were not undertaken in good faith. (*Id.* at p. 721.) The court found this evidence sufficient to establish that the disputed undergrounding surcharge is a franchise fee and not a tax. (*Id.* at pp. 720-722.)

*Mahon* rejected the plaintiffs' argument that "'where a utility merely collects a surcharge from its customers and remits the revenue to a city, the utility has no reason to engage in bona fide negotiations.'" (*Mahon, supra*, 57 Cal.App.5th at p. 721.) The court reasoned: "As is true for any business, a utility plainly has an incentive to minimize the total amount of money that its customers will be required to pay in exchange for its goods and services in order to maintain the goodwill of its customers. . . . Further, while [the] plaintiffs suggest that *Jacks* supports the

15

proposition that a utility has 'no incentive to negotiate a lower . . . surcharge because the surcharge is a pass-through charge,' in fact, *Jacks* supports the opposite proposition. In *Jacks*, as in this case, the surcharge at issue was to be paid directly by the utility's customers [citation], yet the *Jacks* court stated that a governmental agency, such as the City, could look to 'bona fide negotiations . . . to establish a reasonable value of franchise rights.' [Citation.]" (*Id.* at pp. 721-722.)

Applying these principles, we conclude substantial evidence supports the trial court's finding that evidence of the parties' franchise negotiations establishes a reasonable relationship between the 2 percent charge and the property interests conveyed. (See *Morgan, supra*, 223 Cal.App.4th at p. 916.) As described above, the 2 percent charge was the result of five years of arms-length negotiations between a motivated municipal seller and a motivated utility buyer. The City maintained from the beginning that the 1 percent charge was too low and less than the franchise fees commanded by other charter cities. SCE sought to retain an even-playing field with all its customers by paying only the 1 percent charge mandated by the 1937 Act. In the end, the parties compromised by agreeing to the 2 percent charge, with the 1 percent surcharge to be included on SCE customers' bills. Plaintiffs have not provided any evidence that the negotiations were not in good faith. (See *Mahon, supra*, 57 Cal.App.5th at pp. 721-722.)

As the trial court aptly summarized, "SCE had multiple incentives to have negotiated to minimize the total compensation to be paid for franchise rights and to separate for administrative and regulatory purposes that compensation as between an existing 1 percent 'franchise fee' calculation and a surcharge for the excess. The evidence shows that SCE did in fact negotiate in

16

good faith consistently with its incentives to minimize that total compensation.  The evidence shows that [the] City negotiated in good faith consistently to increase the franchise fee to reflect its perception of the value of the franchise rights."  Plaintiffs have not demonstrated that the court erred by finding the 2 percent compensation for the franchise rights is a valid franchise fee and not a tax.

## III.  DISPOSITION

The judgment is affirmed.  The City shall recover its costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

Thomas P. Anderle, Judge
Superior Court County of Santa Barbara

_____

Huskinson Brown & Heidenreich, Paul E. Heidenreich and David W.T. Brown, for Plaintiffs and Appellants.

Colantuono, Highsmith & Whatley, Michel G. Colantuono and Ryan Thomas Dunn; City of Santa Barbara, Ariel Pierre Calonne, Daniel S. Hentschke and Tom R. Shapiro, for Defendant and Respondent.

Office of the San Diego City Attorney, Mara W. Elliott, City Attorney, George F. Schaefer, Assistant City Attorney, Meghan Ashley Wharton, Senior Deputy City Attorney, for Amicus Curiae League of California Cities.